UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TORAN PETERSON,

        Petitioner,                             Hon. Paul L. Maloney

v.                                           Case No. 1:07-CV-99

WILLIE SMITH,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Peterson's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Peterson's petition be **denied**.


## BACKGROUND

        As a result of events that occurred on December 1, 1999, Petitioner was charged with first degree murder and possession of a firearm during the commission of a felony. Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Hefer Obed**

As of December 1, 1999, Obed was employed at a gas station/convenience store located at the intersection of Warren and Cadillac in Detroit. (Trial Transcript, July 18, 2000, 109-10, 118-19). For more than a year prior to this date, Obed observed Petitioner shopping at this particular store several times weekly. (Tr. 112-14). During this time, Obed often spoke with Petitioner. (Tr. 125). On the evening of December 1, 1999, Obed was working at the store with Tarek Al-Rifai,[1] who was operating the cash register. (Tr. 109-11). At approximately 8:00 p.m. that evening, Obed witnessed an altercation between Petitioner and Al-Rifai in which both men were cursing at each other. (Tr. 111-16). Petitioner referred to Al-Rifai as an "Arab mother fucker." (Tr. 146-47). Obed spoke with Petitioner in an attempt to "calm things down," but Petitioner responded by pushing a shelf of candy to the ground and exiting the store. (Tr. 116-17).

Approximately 25 minutes later, Petitioner returned to the store. (Tr. 117). Petitioner did not purchase anything or even exit his vehicle. (Tr. 117-20). Instead, Petitioner simply sat in his car for several minutes and then drove away. (Tr. 117-20). Shortly thereafter, Petitioner again returned to the store. (Tr. 120). Obed walked outside to speak with Petitioner, but Petitioner "took off." (Tr. 120).

At approximately 9:50 p.m. that same evening, Petitioner approached the store on foot just as Al-Rifai was leaving to go home. (Tr. 120-21). Petitioner was wearing gloves and a mask which covered "approximately half [his] face." (Tr. 126-27). Petitioner was also carrying a long-barreled weapon. (Tr. 122-23). As Al-Rifai exited the store, Petitioner shot him four or five

---

[1] The victim's name is spelled several different ways throughout the trial transcript. To aid the reader, the Court has used the official spelling of the victim's name, Tarak Al-Rifai. (Trial Transcript, July 19, 2000, 24).

times. (Tr. 122-24). As he was doing so, Petitioner stated, "mother fucker I told you." (Tr. 125).

While Petitioner's face was partially covered by a mask, Obed recognized Petitioner's voice, having

spoken with him on many occasions at the store. (Tr. 125-27). Obed also observed that Petitioner,

when he shot Al-Rifai, was wearing the same clothes he wore earlier that evening. (Tr. 127).

**Troy Alexander**

As of December 1, 1999, Alexander was employed as a police officer for the City of

Detroit. (Trial Transcript, July 18, 2000, 151-52). Sometime that day, Officer Alexander was

dispatched to a gas station at the intersection of Warren and Cadillac in response to a reported

shooting. (Tr. 152-54). Upon his arrival at the gas station, the victim was already being attended

to by emergency medical personnel. (Tr. 153). As he examined the scene, Officer Alexander

observed "puddles of blood" and "casing from a weapon." (Tr. 154-55).

**Dr. Yung Chung**

On December 2, 1999, Dr. Chung performed an autopsy on Tarek Al-Rifai. (Trial

Transcript, July 19, 2000, 19-24). This examination revealed that Al-Rifai had been shot four times

with a shotgun, once in the back of the head, once in the abdomen, and twice in the right arm. (Tr.

24-27). The doctor determined that Al-Rifai had been shot from a distance of a "couple feet." (Tr.

27). Dr. Chung determined that Al-Rifai died as the result of "multiple shotgun wounds." (Tr. 29).

**Christopher Honore**

As of December 1, 1999, Honore was employed as a police officer with the City of

Detroit. (Trial Transcript, July 19, 2000, 34). In the days following the murder of Tarek Al-Rifai,

Officer Honore attempted to locate Petitioner. (Tr. 34-35). On December 12, 1999, Officer Honore

received information about where Petitioner might be located. (Tr. 35). On December 12, 1999,

Petitioner was captured. (Tr. 35-39). When he was captured, Petitioner was wearing a wig and

lipstick. (Tr. 35-39).


**Frank Horan**

As of December 1, 1999, Horan was employed as a police officer with the City of

Detroit. (Trial Transcript, July 19, 2000, 40). At approximately 11:30 p.m. that evening, Officer

Horan was dispatched to the intersection of Warren and Cadillac to investigate a shooting. (Tr. 40-

42). As part of his investigation, Officer Horan recovered four used Remington shotgun shells and

one live Remington shotgun shell. (Tr. 42-45).


**Gerald Williams**

As of December 6, 1999, Williams was employed as a police officer with the City

of Detroit. (Trial Transcript, July 19, 2000, 48-53). On that date, Officer Williams performed a

search of Petitioner's residence. (Tr. 48-53). This search uncovered a box of Remington shotgun

shells with the "exact same markings" as the shotgun shells recovered from the crime scene. (Tr.

51-53).

Following the presentation of evidence, the jury found Petitioner guilty of first degree

murder and possession of a firearm during the commission of a felony. (Trial Transcript, July 20,

2000, 49). Petitioner was sentenced to serve two years in prison for the firearms violation, to be

served prior to and consecutive to a life sentence on the murder conviction. (Sentencing Transcript, August 3, 2000, 4). Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

I. The cumulative effect of defense counsel's mistakes, lack of pre-trial preparation, and his failure to present a defense denied Defendant his constitutional right to the effective assistance of counsel.

    A. Defendant was denied his right to effective assistance of counsel where his attorney failed to impeach the key witness with prior inconsistent statements, failed to object to inflammatory evidence, and failed to object to the suggestive identification of Defendant.

II. Defendant was denied his right to effective assistance of counsel where his attorney failed to make a motion to suppress the unlawful search of Defendant's house, failed to move to suppress a suggestive in-court identification, failed to request exculpatory evidence, failed to present any defense, failed to have Defendant testify on his own behalf and failed to introduce into evidence or make an offer of proof of exculpatory evidence.

    A. Mr. Peterson was denied the effective assistance of counsel where counsel failed to move to suppress the evidence seized during the search of Defendant's house and failed to move for a lineup or to suppress a suggestive identification.

    B. Mr. Peterson was denied the effective assistance of counsel where counsel failed to request surveillance tapes from the gas station.

    C. Defense counsel violated Defendant's

Sixth Amendment right to due process when he advised his client not to take the witness stand on his own behalf, and failed to present any defense.

D.     Mr. Peterson was denied the effective assistance of counsel where counsel failed to interview or attempt to produce a witness, or attempt to introduce a statement in police report that two men took part in the shooting, one of whom was limping.

III.   The trial court's failure to grant defense counsel's motion to withdraw in conjunction with Defendant's request to have a new attorney appointed following the complete breakdown of the attorney/client relationship denied Defendant effective assistance of counsel and due process of law.

IV.    The trial court erred in finding that the prosecution used due diligence to locate res gestae witness because police did not follow the obvious lead of inquiring about the witness at his place of employment and Defendant was denied his right of confrontation.

V.     The judgment rendered by the trial court, in the Defendant's case, is void on the grounds the trial court lacked proper personam jurisdiction over the Defendant where the district court failed to make the requisite probable cause determination violating the Defendant's rights and state statutes.

VI.    The failure of the district court to make the requisite determination of probable cause was clearly erroneous and plain error, as a matter of law and constitution, the failure to make the requisite probable cause determination precluded the trial court from obtaining a valid jurisdiction thereby making the Defendant's judgment void ab initio.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Peterson,*

6

No. 229705, Opinion (Mich. Ct. App., Oct. 1, 2002). Asserting the same claims, Petitioner moved

in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating

that "we are not persuaded that the questions presented should be reviewed by this Court." *People*

*v. Peterson,* No. 122690, Order (Mich., April 29, 2003).

Petitioner subsequently filed in the trial court a motion for relief from judgment in

which he asserted the following claims:

> I.     Defendant was denied the effective assistance of trial
> counsel where counsel denied Defendant the right of
> effective cross-examination.
>
> II.    Defendant was denied his right to a fair trial and of
> due process of law where trial counsel failed to object
> or attempt to let the trial court know that a key
> prosecution witness was never excused.
>
> III.   Defendant was denied effective assistance of trial
> counsel where counsel failed to litigate a Fourth and
> Fourteenth Amendment claim of illegal search and
> seizure.
>
> IV.   Defendant was denied a fair trial and effective
> assistance of counsel where counsel failed to
> challenge the in-court identification which violated
> due process and lacked an independent basis.
>
> V.    Defendant was denied the effective assistance of
> appellate counsel where his appellate attorney did not
> raise the above issues in appeal by right.

Petitioner's motion was denied for failure to satisfy the requirements of Michigan

Court Rule 6.508(D)(3). *People v. Peterson*, No. 00-3324, Opinion (Third Cir. Ct., Crim. Div., Sep.

13, 2004). Asserting the same claims, Petitioner appealed the matter to the Michigan Court of

Appeals, which denied Petitioner's request "for failure to meet the burden of establishing entitlement

to relief under MCR 6.508(D)." *People v. Peterson*, No. 264377, Order (Mich. Ct. App., Mar. 16,

2006). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to

appeal. The court denied Petitioner's request because he "failed to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v. Peterson*, No. 131575, Order (Mich., Oct. 31,

2006). On January 31, 2007, Petitioner initiated the present action in which he asserts the following

claims:

> I.     Defendant was denied the effective assistance of trial
>        counsel where counsel denied Defendant the right of
>        effective cross-examination.
>
> II.    Defendant was denied his right to a fair trial and of
>        due process of law where trial counsel failed to object
>        or attempt to let the trial court know that a key
>        prosecution witness was never excused.
>
> III.   Defendant was denied a fair trial and effective
>        assistance of trial counsel where counsel failed to
>        litigate a Fourth and Fourteenth Amendment claim of
>        illegal search and seizure.
>
> IV.    Defendant was denied a fair trial and effective
>        assistance of counsel where counsel failed to
>        challenge the in-court identification which violated
>        due process and lacked an independent basis.
>
> V.     Defendant was denied the effective assistance of
>        appellate counsel where his appellate attorney did not
>        raise the above issues in appeal by right.
>
> VI.    The cumulative effect of defense counsel's mistakes,
>        lack of pre-trial preparation, and his failure to present
>        a defense denied Defendant his constitutional right to
>        the effective assistance of counsel.
>
> VII.   Defendant was denied his right to effective assistance
>        of counsel where his attorney failed to make a motion
>        to suppress the unlawful search of Defendant's house,
>        failed to move to suppress a suggestive in-court

identification, failed to request exculpatory evidence, failed to present any defense, failed to have Defendant testify on his own behalf and failed to introduce into evidence or make an offer of proof of exculpatory evidence.

VIII.    The trial court's failure to grant defense counsel's motion to withdraw in conjunction with Defendant's request to have a new attorney appointed following the complete breakdown of the attorney/client relationship denied Defendant effective assistance of counsel and due process of law.

IX.    The trial court erred in finding that the prosecution used due diligence to locate res gestae witness because police did not follow the obvious lead of inquiring about the witness at his place of employment.

X.    The judgment rendered by the trial court, in the Defendant's case, is void on the grounds the trial court lacked proper personam jurisdiction over the Defendant where the district court failed to make the requisite probable cause determination violating the Defendant's rights and state statutes.

XI.    The failure of the district court to make the requisite determination of probable cause was clearly erroneous and plain error, as a matter of law and constitution, the failure to make the requisite probable cause determination precluded the trial court from obtaining a valid jurisdiction thereby making the Defendant's judgment void ab initio.

XII.    Petitioner was denied an effective direct appeal as of right where his trial transcripts are inaccurate where it doesn't reflect what occurred at his trial nor does it show a crucial error on the trial court's behalf denying Petitioner due process of law and equal protection of law where the court made a mistrial.

XIII.    Petitioner was deprived of procedural and substantive due process, due process of law, and equal protection of law creating plain error effecting his substantial

rights where the RETURN TO CIRCUIT COURT
FELONY is signed by a different district
judge/magistrate other than the one who held
preliminary examination and the INFORMATION
FELONY isn't signed thus denying the trial court of
subject matter jurisdiction and in personam
jurisdiction thus making the judgment void ab initio.
Petitioner was denied effective assistance of trial and
appellate counsel where they failed to challenge this
egregious error.[2]

## STANDARD OF REVIEW

Peterson's petition is subject to the provisions of the Antiterrorism and Effective

Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the

substantive standards for granting habeas relief under the following provisions:

> (d)    An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of
> the United States, or
>
> (2)    resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

---

[2] Petitioner subsequently amended his petition to remove claims X-XIII. (Dkt. #35). Accordingly, the only claims presently before the Court are habeas claims I-IX.

extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's]

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*,

539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS[3]

**I.        Habeas Claims I-V**

In claims I-IV, Petitioner asserts various claims of ineffective assistance of trial counsel. In claim V, Petitioner asserts that his appellate counsel rendered ineffective assistance by failing to assert claims I-IV on direct appeal.

Petitioner failed to present claims I-IV on direct appeal in the state courts. Instead, Petitioner first asserted these claims in his post-conviction motion for relief. Finding that Petitioner had failed to comply with relevant state procedure, the trial court, the Michigan Court of Appeals, and the Michigan Supreme Court all declined to address the merits of these particular claims. Respondent asserts that this Court is likewise barred, by the procedural default doctrine, from addressing the merits of these particular claims.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Where Petitioner's claims

---

[3]  The Court initially notes that certain portions of Respondent's Answer, (dkt. #30), clearly have nothing to do with the present action. Specifically, Respondent's first argument, located on pages 5-8, concern a different matter altogether. *See Tudor v. Harry*, case no. 1:05-cv-827, dkt. #12 at pgs 5-8 (W.D. Mich). The remainder of Respondent's answer does, however, address all of the claims before the Court in the present action.

The Court also notes that Peterson, in his petition for writ of habeas corpus filed in this Court, has failed to articulate the precise nature of many of his claims for relief. Where such is the case, the Court has consulted Petitioner's various state court pleadings for guidance.

have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

      The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004). For the procedural default doctrine to apply, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). However, review by a state court of a procedurally defaulted claim to prevent manifest injustice does not constitute a review on the merits sufficient to excuse procedural default. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("a state court's plain error analysis does not save a petitioner from procedural default").

      If Petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice. *See Bagley*, 380 F.3d at 966 (citing *Coleman*, 501 U.S. at 750).

      With respect to cause, Petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Johnson v. Wilson*, 187 Fed. Appx. 455, 458

(6th Cir., June 16, 2006). To establish that a miscarriage of justice would result from the failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991). To satisfy this requirement Petitioner must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error "probably resulted" in the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 324-27 (1995). The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 326-27.

  Michigan Court Rule 6.508 provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised in a prior appeal. M.C.R. 6.508(D)(2)-(3). With respect to claims which could have been raised in a prior appeal, a defendant is entitled to relief only if he can establish both "good cause" for failing to assert the issue previously and "actual prejudice" resulting therefrom. M.C.R. 6.508(D)(3). In this context, "actual prejudice" is defined as a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b).

  The Sixth Circuit has held that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002). Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues against which it is applied. *Simpson*, 238 F.3d at 407.

In claims I-IV, Petitioner asserts various claims of ineffective assistance of counsel. Petitioner did not assert these claims in his direct appeal as of right, but instead asserted them in his post-conviction motions for relief. As previously noted, Petitioner's motion for relief from judgment was denied in the trial court, the Michigan Court of Appeals, and the Michigan Supreme Court on the ground that Petitioner failed to comply with Michigan Court Rule 6.508(D). Accordingly, the Court finds that Petitioner has procedurally defaulted these particular claims. Petitioner has failed to establish that good cause exists for his failure to properly raise these procedurally defaulted claims in his direct appeal as of right. Petitioner has likewise failed to establish that he will suffer a fundamental miscarriage of justice from the Court's failure to consider these claims. Accordingly, the Court is precluded from reviewing the merits of these claims. Moreover, even if Petitioner could establish either requirement, the result is the same as these claims are without merit.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

A.      Habeas Claim I

In support of his motion for relief from judgment filed in the trial court, Petitioner submitted copies of two separate police reports completed on the night of the shooting. (Dkt. #1). The reports were completed by two separate police officers and contain statements apparently made by Hefer Obed. Petitioner alleges that his trial counsel rendered ineffective assistance by failing to "confront [Obed] with his two contradicting written statements."

First, the two statements in question were not written by Obed, but were instead written by two different police officers who spoke with Obed. While Obed appears to have signed the second statement, indicating his agreement with the officer's description of his statements, there is no indication that Obed signed or otherwise affirmed the first statement. Petitioner's characterization that the statements in question were authored by Obed is, therefore, inaccurate.

Moreover, Petitioner's assertion that Obed's descriptions of Al-Rifai's killer as reflected in the two statements are inconsistent is not persuasive. In both statements, the killer is described as a black male in his twenties, approximately six feet tall, slimly built, wearing a dark jacket with a hood, and with a scarf covering a portion of his face. The only apparent discrepancy in the two statements is that in the first, the killer is reported to have been wearing "blk pant" whereas the second statement reports that the killer was wearing "blue jeans." Petitioner's counsel

cross-examined Obed at length concerning his interactions with the police and his identification of Petitioner as Al-Rifai's killer.

The Court discerns no deficiency in counsel's performance. Moreover, even if the Court assumes that counsel's performance in this regard was deficient, Petitioner has failed to demonstrate that he was prejudiced thereby. Any advantage that Petitioner may have gained by pointing out minor discrepancies in Obed's statements is overwhelmed by the evidence of Petitioner's guilt, including the largely consistent nature of Obed's statements, the strength of Obed's identification of Petitioner as Al-Rifai's killer, and the recovery of ammunition from Petitioner's residence that possessed the "exact same markings" as ammunition recovered from the crime scene. The Court finds, therefore, that this claim is without merit.

B.     Habeas Claim II

On the first day of trial, as Officer Alexander was being questioned by the prosecutor, Petitioner began objecting to Alexander's testimony. (Trial Transcript, July 18, 2000, 156). Petitioner then stated his attorney "is not working on my behalf. . .I've been asking him to do things he has not been doing them I would like to fire him." (Tr. 156). After the jury was excused, Petitioner again expressed his displeasure with his attorney's performance. (Tr. 156-59). Petitioner told the trial judge that he "will not let this trial go on with him as my lawyer." (Tr. 158). Because it was late in the day, the trial judge decided to adjourn for the day and give Petitioner an opportunity to consult with his attorney. (Tr. 157-61).

The following morning, before trial resumed, the trial judge explored the matter further. Petitioner again expressed his displeasure with his attorney's performance and requested

that a mistrial be declared and new counsel appointed. (Trial Transcript, July 19, 2000, 5-7). This request was denied at which point the trial judge began discussing with Petitioner whether he wanted to instead represent himself. (Tr. 7-13). Petitioner decided that he wanted to represent himself and declared that he wanted to recall Hefer Obed to testify. (Tr. 9-12). The trial judge indicated that Obed had already been excused, but nevertheless attempted to locate Obed. (Tr. 12-17). This attempt was unsuccessful, at which point Petitioner withdrew his request to represent himself and decided "to go with my lawyer." (Tr. 15-17). Petitioner asserts that his trial counsel rendered ineffective assistance in that he "failed to object or attempt to let the trial court know that [Obed] was never excused."

First, the record reflects that Obed was, in fact, excused at the conclusion of his testimony. (Trial Transcript, July 18, 2000, 148). Furthermore, even assuming that Petitioner had been able to re-examine Obed, Petitioner has failed to articulate how such further examination would have advanced his cause. Accordingly, Petitioner cannot establish that his counsel's performance in this regard was deficient or that, even assuming such is the case, that he suffered prejudice as a result therefrom.


C. Habeas Claim III

As previously noted, police officers executed a search of Petitioner's residence on December 6, 1999, during which incriminating evidence was discovered. Petitioner asserts that his trial counsel was ineffective for failing to challenge the constitutionality of this search.

Officer Williams testified that his investigation revealed that Petitioner and his mother both resided in the residence at 5139 Pennsylvania. (Trial Transcript, July 19, 2000, 48-51).

Williams testified that on December 6, 1999, he traveled to this location. (Tr. 49). Petitioner's mother was present at the residence and signed a consent form authorizing the officer's search of the residence. (Tr. 49-51). Petitioner asserts that because his mother did not reside at this residence, she lacked the capacity to give consent to a search thereof. In support of his position, Petitioner has submitted an affidavit executed by his mother. (Dkt. #1). In this affidavit, Petitioner's mother asserts the following: (1) she owned the house at 5139 Pennsylvania; (2) Petitioner was the sole occupant of this residence; and (3) she informed the officers that she owned the home, but did not reside therein. Petitioner asserts, therefore, that the search of his residence was illegal and the items recovered during the search (i.e., the shotgun ammunition) were inadmissible. Petitioner faults his attorney for failing to challenge the legality of the search.

It is well understood that the Fourth Amendment generally prohibits warrantless searches of an individual's home. *See United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007) (citations omitted). However, a warrantless search is not illegal where "voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* (citations omitted). Common authority "is not to be implied from the mere property interest a third party has in the property," but instead "rests on mutual use of the property by persons generally having joint access or control for most purposes." *Id.* (citation omitted).

Petitioner has failed to demonstrate that a motion to suppress the evidence in question would have been successful. Petitioner concedes that his mother owned the house in question. There is no dispute that Petitioner's mother was present at the residence on the date in question. While Petitioner's mother asserts that she informed Officer Williams that she did not reside in the

house, she also acknowledged that she owned the home. Moreover, the fact that she was present in the house, in Petitioner's absence, when police arrived supports the argument that Petitioner's mother enjoyed joint access or control of the residence. Also, Petitioner's mother has not asserted that her consent was less than voluntary and there is no evidence suggesting that such was the case.

In sum, Petitioner has not demonstrated that a motion to suppress would have been successful. Thus, Petitioner cannot establish that he suffered any prejudice from counsel's failure to challenge the search in question. Moreover, even if the Court assumes that counsel could have successfully challenged the search, Petitioner cannot establish that the outcome of his trial would have been any different given the strength of the other evidence introduced against Petitioner. The Court concludes, therefore, that this claim is without merit.

### D. Habeas Claim IV

As indicated above, Hefer Obed testified at trial and identified Petitioner as the man who murdered Tarak Al-Rifai. Petitioner asserts that his trial counsel was ineffective for failing to challenge Obed's in-court testimony identifying him as the killer.

The due process clause protects criminal defendants from being convicted on the basis of "evidence derived from a suggestive identification procedure" that was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) and citing *Neil v. Biggers*, 409 U.S. 188, 197 (1972)). It is the likelihood of misidentification that violates a criminal defendant's due process rights. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (citing *Biggers*, 409 U.S. at 198). Accordingly, absent "a very substantial likelihood of irreparable

misidentification," identification evidence "is for the jury to weigh." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

To determine whether an identification procedure violated a criminal defendant's due process rights, a court employs a two-step analysis. *Ledbetter*, 35 F.3d at 1070-71; *Haliym*, 492 F.3d at 704. The court must first determine whether the identification procedure in question was unnecessarily suggestive. *Ledbetter*, 35 F.3d at 1070-71; *Haliym*, 492 F.3d at 704. Determining whether an identification procedure is unnecessarily suggestive "depends upon whether the witness's attention was directed to a suspect because of police conduct." *Howard*, 405 F.3d at 470.

If the identification procedure is found to be unnecessarily suggestive, the court must determine "whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Id.* (quoting *Manson*, 432 U.S. at 107); *see also*, *Ledbetter*, 35 F.3d at 1071; *Haliym*, 492 F.3d at 704. When considering whether a suggestive identification is nonetheless reliable, the Court must consider the following factors: (1) the witness' opportunity to view the suspect; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the time between the crime and the identification. *Haliym*, 492 F.3d at 704 (citing *Manson*, 432 U.S. at 114 and *Neil*, 409 U.S. at 199-200).

Petitioner acknowledges that Obed did not identify him out of a corporeal lineup or photographic array procedure. Instead, Obed informed the police, immediately after the shooting, that he recognized the man that killed Al-Rifai. (Dkt. #47, Witness Statement). While Obed did not know the killer's name, Obed informed the police that the killer was the same man that had earlier that same evening entered the store and argued with Al-Rifai. Obed further stated that the killer was

a "regular customer" at the store. At the preliminary examination, Obed identified Petitioner as the man that shot Al-Rifai. (Dkt. #38). Obed testified that he recognized Petitioner as the man who had entered the store earlier that evening and argued with Al-Rifai. Obed testified that although Petitioner, at the time of the shooting, was wearing a mask that covered a portion of his face he recognized Petitioner's eyes. Obed further testified that he recognized Petitioner's voice from statements Petitioner made during his attack on Al-Rifai. At Petitioner's trial, Obed offered the same testimony. (Dkt. #40).

There is no evidence that Obed identified Petitioner because of any action undertaken by the police or other government official. There is no evidence that the process by which Obed identified Petitioner was unduly suggestive. Moreover, there is no evidence that there exists a "substantial likelihood of irreparable misidentification." Obed's statement to the police, his testimony at the preliminary examination, and his testimony at trial were not inconsistent in any meaningful way and were based upon Obed's first hand experiences. As previously noted, absent "a very substantial likelihood of irreparable misidentification," identification evidence "is for the jury to weigh."

In sum, Petitioner cannot demonstrate that there existed any legitimate basis to prevent Obed from offering identification testimony at trial. Thus, Petitioner cannot establish that he suffered prejudice as a result of his attorney's failure to seek to prevent Obed from offering such testimony. Accordingly, this issue is without merit.

E.     Habeas Claim V

Petitioner asserts that his appellate counsel rendered ineffective assistance by failing

to assert habeas claims I-IV on direct appeal. These particular claims are without merit, as discussed immediately above. Thus, counsel was not ineffective for failing to assert such on appeal.

**II.          Habeas Claim VI**

Petitioner alleges that his trial counsel rendered ineffective assistance by "his failure to present a defense." Specifically, Petitioner asserts that counsel failed in the following ways: (1) failed to impeach Obed with inconsistent statements; (2) failed to challenge Obed's identification testimony, and (3) failed to move to suppress the evidence recovered from the search of his residence. As discussed above, Petitioner's claims concerning counsel's failure to object to Obed's identification testimony and counsel's failure to seek the suppression of evidence recovered during the search of Petitioner's residence are without merit.

Petitioner's claim that counsel failed to properly impeach Obed has two components. Petitioner first alleges that counsel failed to sufficiently question Obed concerning the statements he made to the police on the night of Al-Rifai's killing. As discussed above, this claim is without merit. Petitioner further asserts that counsel failed to sufficiently question Obed concerning an alleged inconsistency in his preliminary examination and trial testimony.

At the preliminary examination, Obed testified that after Al-Rifai was shot, Al-Rifai "tried to catch Peterson." (Preliminary Examination, March 13, 2000, 26-30). At trial, Obed offered no such testimony. Petitioner asserts that it was "medically impossible" that Al-Rifai could have attempted to "catch Peterson" after being shot in the back of the head. Accordingly, Petitioner asserts that his counsel was ineffective for failing to challenge Obed at trial on this matter.

First, Petitioner has presented no evidence that it would have been "medically

impossible" for Al-Rifai to chase Petitioner a short distance after he was shot. Furthermore, as the Michigan Court of Appeals observed in rejecting this claim, the relevant issue at Petitioner's trial "was whether defendant was the person who committed the crime, not how long the decedent survived before dying of his wounds." *People v. Peterson,* No. 229705, Opinion at 2 (Mich. Ct. App., Oct. 1, 2002). The rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

### III.             Habeas Claim VII

Petitioner asserts that his right to the effective assistance of counsel was denied because his attorney: (1) failed to move to suppress the unlawful search of his house; (2) failed to move to suppress Obed's identification testimony; (3) failed to "request exculpatory evidence;" (4) failed to "present any defense;" (5) failed to "have defendant testify on his own behalf;" and (6) failed to "introduce into evidence or make an offer of proof of exculpatory evidence." As previously discussed, Petitioner's claims regarding the search of his residence and Obed's identification testimony are without merit.

Petitioner faults his attorney for failing to obtain the convenience store's surveillance videotape from the night Al-Rifai was murdered. As the Michigan Court of Appeals observed in rejecting this claim, there is no evidence that any such videotape existed. *People v. Peterson,* No. 229705, Opinion at 3 (Mich. Ct. App., Oct. 1, 2002). The Court further notes that Petitioner has failed to establish that even if such a videotape had existed, that it contained exculpatory evidence.

The rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

Petitioner faults his attorney for advising him not to testify at trial. In support of this claim, Petitioner submitted an affidavit in which he asserts that, "I wanted to testify at trial that I did not shoot the victim, that someone else did." (Dkt. #47). The Michigan Court of Appeals rejected this claim on the ground that Petitioner failed to overcome the presumption that counsel's advice constituted "sound strategy." *People v. Peterson,* No. 229705, Opinion at 3 (Mich. Ct. App., Oct. 1, 2002). This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

Petitioner next faults his attorney for failing to present an "adequate and plausible" defense. Petitioner acknowledges that his attorney did, in fact, advance the defense that Hefer Obed's identification testimony was unreliable. As the Michigan Court of Appeals correctly observed, Petitioner "does not indicate what other defense should have been presented." *People v. Peterson,* No. 229705, Opinion at 3 (Mich. Ct. App., Oct. 1, 2002). The court of appeals rejected this claim on the ground that Petitioner failed to overcome the presumption that counsel's action constituted reasonable strategy. *Id.* This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim

raises no issue upon which habeas relief may be granted.

Finally, Petitioner alleges that his counsel was ineffective for failing to "introduce into evidence or make an offer of proof of exculpatory evidence." This claim concerns a potential witness to Al-Rifai's killing. On December 1, 1999, at approximately 10:50 p.m., a police officer spoke with Kenneth Taylor regarding the crime. (Dkt. #47). Taylor reported that he was sitting on his cousin's porch "on Hurlbut just north of E[ast] Warren when I heard 4 gunshots coming from the area of E[ast] Warren [and] Cadillac." Taylor reported that he then "walked to Warren" where he saw two black men "running east from Cadillac." Taylor reported that he "didn't get a good look at the men," but he observed that one of the men was carrying a "long gun."

However, because the authorities were later unable to locate Taylor he did not testify at Petitioner's trial. Petitioner asserts that his attorney was ineffective for failing to introduce the content of Taylor's statement by questioning the officer with whom Taylor spoke. As such would constitute hearsay, the Court fails to discern how counsel's performance in this regard was deficient. Moreover, as the Michigan Court of Appeals noted in rejecting this claim, there was no evidence that counsel's efforts to locate Taylor were deficient. Furthermore, Taylor's statement to the police is not inconsistent with Hefer Obed's testimony. Thus, even if the Court assumes that counsel's efforts in attempting to locate Taylor were deficient, Petitioner has failed to demonstrate how such prejudiced his defense. Accordingly, this claim raises no issue on which habeas relief may be granted.

IV.        **Habeas Claim VIII**

As discussed above, Petitioner engaged in an outburst towards the end of the first day

of trial.  (Trial Transcript, July 18, 2000, 156).  Petitioner expressed his displeasure with his attorney's performance and stated that he wanted "to fire him."  (Tr. 156-59).  Rather than rule on Petitioner's request immediately, the trial judge adjourned proceedings for the day to afford Petitioner an opportunity to consult with his attorney.  (Tr. 157-61).

The following morning, Petitioner again expressed his displeasure with his attorney's performance and requested that a mistrial be declared and new counsel appointed.  (Trial Transcript, July 19, 2000, 5-7).  Petitioner's request was denied at which point the trial judge began discussing with Petitioner whether he wanted to instead represent himself.  (Tr. 7-13).  Petitioner initially indicated that he would represent himself, but upon learning that he would not be able to recall Hefer Obed to testify, Petitioner withdrew his request to represent himself.  (Tr. 9-17).  Petitioner claims that the trial court improperly denied his mid-trial request for a new attorney.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to. . .the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  While an "essential" element of this right is the right to be represented by "counsel of one's choice," the right to be represented by chosen counsel "is not absolute."  *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007) (citing *United States v. Gonzales-Lopez*, 548 U.S. 140, 144 (2006)).  When considering a defendant's request to obtain substitute counsel, courts must consider the following factors: (1) timeliness of the request; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the alleged conflict between defendant and counsel is so great that it results in "a total lack of communication preventing an adequate defense."  *Mooneyham*, 473 F.3d at 291.  The court must balance the defendant's right to counsel of his choice with the public's interest in the prompt and efficient administration of

justice. *Id.*

An examination of these factors reveals that Petitioner's Sixth Amendment rights were not violated. Petitioner's request was not timely. The trial judge inquired as to the basis of Petitioner's request and discerned no evidence that Petitioner's counsel was incapable of rendering satisfactory performance. There is also no evidence the alleged conflict between Petitioner and his attorney was so great that it prevented counsel from adequately defending Petitioner. Finally, as discussed herein, there is no evidence that counsel rendered ineffective performance.

The Michigan Court of Appeals rejected this particular claim, finding that the trial court did not abuse its discretion in denying Petitioner's request for substitute counsel. *People v. Peterson,* No. 229705, Opinion at 3-4 (Mich. Ct. App., Oct. 1, 2002). In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## V.        Habeas Claim IX

As previously noted, the authorities were unable to locate Kenneth Taylor after the night of Al-Rifai's killing. Before the jury received its final instructions, Petitioner moved for "a favorable instruction as to [Taylor's] non-appearance." (Trial Transcript, July 19, 2000, 57). After receiving evidence on the matter, the trial judge denied Petitioner's motion, finding that "the police did make reasonable efforts and did show due diligence in trying to locate" Taylor. (Tr. 57-67). Petitioner asserts that the trial court's decision was in error.

To obtain relief because of incorrect or improper jury instructions, Petitioner must "show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair." *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). A review of the jury instructions, as a whole, reveals that Petitioner can make no such showing. *See also*, *Browning*, 837 F.2d at 281 ("an erroneous jury instruction will not cause reversal where the jury's verdict demonstrates that it found against the defendant on all facts necessary to support a conviction").

Officer Williams testified that he undertook significant efforts to locate Taylor. (Trial Transcript, July 19, 2000, 58-62). The trial judge denied Petitioner's request, finding that Officer Williams made "reasonable efforts and did show due diligence in trying to locate" Taylor. (Tr. 67). Furthermore, as previously noted, Taylor's statement to the police was not inconsistent with Hefer Obed's testimony. The Court, therefore, fails to discern how the trial judge's decision not to give the requested instruction denied Petitioner of a fair trial. Accordingly, this particular claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Peterson's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                          Respectfully submitted,


Date:  February 4, 2010                        /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                            United States Magistrate Judge